**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHAPARRAL TEXAS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2468 |
| | § | |
| W. DALE MORRIS, INC., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises out of a contract to purchase oil and gas wells, leases, and properties located in Texas. The parties have cross-moved for partial summary judgment on the enforceability and effect of a contract provision requiring the buyer to give the seller notice of any claim that the seller is liable within one year of the closing date. The buyer, Chaparral Texas, L.P., urges that its failure to give timely notice of a claim it asserts against the seller defendants, W. Dale Morris, Inc. and Paul R. Galloway, Jr., does not bar the claim in this case. The defendants cross-move for partial summary judgment that the claim is barred because of Chaparral's failure to give the notice the contract requires. This court denies Chaparral's motion and grants the seller defendants' cross-motion, for the reasons explained in detail below.

**I.     Background**

Chaparral Texas, L.P. and W. Dale Morris, Inc. ("WDMI") and Paul R. Galloway, Jr., entered into a Purchase and Sale Agreement ("PSA" or "Agreement"). The Agreement was

dated July 24, 2004 and had a closing date of August 4, 2004.  In the Agreement, Chaparral,

the "Buyer," acquired from WDMI and Galloway, the "Seller," oil and gas wells, leases, and

other property located in Texas.  The Agreement included Chaparral's purchase of the Vastar

Fee # 2 Saltwater Disposal Injection Well, which was previously operated by WDMI.

The Agreement set out the Seller's warranties and representations of compliance with

applicable rules and regulations, which included Texas Railroad Commission rules and

regulations.  The Agreement also set out the Seller's covenant that its warranties and

representations were true as of the closing date.  The Agreement also contained a broad

arbitration clause, section 10.11, and a paragraph entitled "Limitation of Seller's Liability,"

section 8.06.  This section stated as follows:

> Limitation on Seller Liability.  After the Closing, any assertion
> by Buyer that Seller is liable under this Agreement or for any
> other reason must be made by Buyer in writing and must be
> given to Seller on or prior to the last business day preceding the
> first anniversary of the Closing Date.  The notice shall state the
> facts known to Buyer that give rise to such notice in sufficient
> detail to allow Seller to evaluate the assertion of Buyer.

(Docket Entry No. 13, Ex. A at 16).

On April 26, 2006, Chaparral's counsel sent a letter to counsel for the Seller.  In that

letter, Chaparral invoked the arbitration clause set out in section 10.11 of the Agreement as

to two claims.  The first was a claim that the Vastar Fee #2 well had been perforated at

depths that violated the Texas Railroad Commission's rules and regulations.  In the demand

letter, counsel for Chaparral stated that "after assuming operations of the SWD well,

Chaparral discovered that WDMI had in fact perforated an additional injection interval at

strata located at or approximately 6,010 to 6,076 feet deep," which violated the rules and regulations of the Texas Railroad Commission authorizing fluid injection only into strata in the depth interval from 7,621 to 7,708 feet in that well.  The letter asserted that the injection interval breached the warranties the Seller had made in section 3.01(h) of the Agreement and breached the covenant made in section 4.01(d) that the warranties were true and correct as of the closing date.  The letter stated that Chaparral had spent over $100,000 to bring the well into compliance with the Texas Railroad Commission rules and regulations and that it was entitled to be indemnified against those costs because they "accrue[d] or relate[d] to" WDMI's actions and operations before the August 4, 2004 closing date of the Agreement. The April 26, 2006 letter also asserted a claim that the Seller owed over $12,000 in post-closing-price adjustments and noted that Chaparral had previously provided notice of this claim.  (Docket Entry No. 1, Ex. B).  Chaparral demanded arbitration as to both claims.

In a May 2, 2006 letter sent in response, counsel for the Seller invoked section 8.06 of the Agreement.  In the letter, counsel for the Seller asserted that Chaparral's notice of arbitration and of the claim relating to the Vastar Fee #2 well were "time-barred" because under the parties' Agreement, "the last day on which Chaparral could assert any claim against WDMI for liability under the [Agreement] was August 3, 2005," one year after the closing date of the Agreement.  (Docket Entry No. 1, Ex. C).

On July 26, 2006, Chaparral filed this suit.  Chaparral sought an order compelling arbitration of the claims relating to the Vastar Fee #2 well and the post-closing-price adjustments.  Chaparral asserted causes of action for breach of contract, statutory fraud,

3

negligent misrepresentation, and restitution or a constructive trust.  (Docket Entry No. 1).

The defendants, the Seller, answered and asserted affirmative defenses and a "conditional

counterclaim."  (Docket Entry No. 5).  The affirmative defenses include the defense that

Chaparral failed to give the Seller timely notice of its claim relating to the well under section

8.06 of the Agreement.  Chaparral moved for partial summary judgment that this affirmative

defense is invalid as a matter of law and does not bar its ability to pursue the claim in

litigation or arbitration.  Chaparral argues that if section 8.06 is applied to bar the claim, it

is a limitations provision that would be invalid under Texas law.  Chaparral also argues that

if section 8.06 is merely a notice provision, dismissal is not the appropriate consequence of

a failure to comply.  (Docket Entry No. 13).

The Seller defendants responded and filed a cross-motion for partial summary

judgment.  They assert that as a matter of law, section 8.06 is enforceable and bars

Chaparral's claim relating to the Vastar Fee #2 well.  The Seller defendants argue that section

8.06 is not a contractual limitations provision but rather a  provision requiring notice of a

claim within a certain time as a condition precedent to asserting that claim.  The Seller

defendants argue that such a notice requirement is enforceable under Texas law so long as

the period for giving the notice is reasonable.  Under section 8.06, Chaparral had one year

after the closing date to provide the Seller with notice of the claim that the Seller was liable

for the impermissible perforations in the Vastar Fee # 2 well.  The Seller defendants assert

that Chaparral's failure to give notice of this claim within the year after the closing date

precludes holding the Seller liable for that claim.  The Seller defendants did not assert that

Chaparral's claim for post-closing-price adjustments was precluded by the notice provision.

The defendants also asserted as separate affirmative defenses that Chaparral's claims were barred by limitations and were covered by the "environmental claims" section of the parties' Agreement.  Chaparral moved for partial summary judgment that these affirmative defenses were invalid as a matter of law.  (Docket Entry No. 13).  The defendants admitted in their response that these defenses do not apply.  (Docket Entry No. 15 at 8, n.3).

Based on a careful review of the motions and response, the record, and the applicable law, this court grants Chaparral's motion for partial summary judgment as to the "limitations" and "environmental claims" defenses and denies its motion as to the "notice" defense.  This court grants the Seller defendants' cross-motion for partial summary judgment as to the claims involving the Vastar Fee # 2 well and denies the motion as to the claims for the post-closing-price adjustments.  The reasons are set out below.

## II.    The Summary Judgment  Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden

of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. Exxonmobil Corp*., 155 F. App'x. 798, 800 (5th Cir. 2005).

6

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. App'x. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

## III.    Analysis

The record contains the Purchase and Sale Agreement,[1] affidavits from W. Dale Morris, the president of WDMI, and Paul R. Galloway, stating that the first notice they received as to Chaparral's claim involving the Vastar Fee # 2 well was on April 26, 2006,[2] and an affidavit from defendants' counsel.[3]

---

[1] Docket Entry No. 13, Ex. A.; Docket Entry No. 15, Ex. A.

[2] Docket Entry No. 15, Ex. C at 1, 2.

[3] Docket Entry No. 15, Ex. C-3. Chaparral objects that the affidavit contains inadmissible legal conclusions, parol evidence, and conclusory statements. (Docket Entry No. 16 at 2–4). In that affidavit, counsel acknowledges that he "was not involved in the negotiations for the purchase and sale of the oil and gas properties that are at issue in this case." The affidavit states the opinion that paragraph 8.06 requires notice of known issues within a year from closing and that the notice requirement is reasonable and enforceable. (Docket Entry No. 15, Ex. C-3 at ¶¶ 4–17). An attorney's expert testimony on the meaning of a contract, a matter of law for the court, is not admissible. *See, e.g., Owen v. Kerr-McGee Corp*., 698 F.2d 236, 204 (5th Cir. 1983). Paragraphs 4 through 17 of Hamric's affidavit are stricken.
  Chaparral also objects to paragraph 18, which attaches the April 26, 2006 letter. The April 26, 2006 letter was included in Chaparral's original complaint, (Docket Entry No. 1, Ex. B), as well as the subsequent motion filed by the defendants, (Docket Entry No. 17, Ex. B). This objection is overruled.
  Chaparral objects to the defendants' Exhibit B, a letter from WDMI's counsel to Chaparral's counsel dated July 28, 2005. (Docket Entry No. 15–3). The July 28, 2005 letter accuses Chaparral of failing to pay taxes related to the conveyance of the property by WDMI, and failing to satisfy bond requirements related to the properties. (*Id.*). This letter is not relevant to the specific issues raised in the cross-motions.

The parties agree that Texas law applies.  Under Texas law, "[i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499, 504 (5th Cir. 2001). Courts examine and consider a contract as a whole and give effect to all provisions.  *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).  If the contract is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.  *Id.*  Texas courts interpret contract terms "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive."  *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

The parties agree that if section 8.06 is a contractual statute of limitations, it is invalid. Texas law provides: "[A] person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period of shorter than two years.  A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state."  TEX. CIVIL PRAC. & REC. CODE § 16.070(a); *see also Duster v. Aetna Ins. Co.*, 668 S.W.2d 806 (Tex. App.—Houston 1984, writ ref'd n.r.e.) (contract requirement that suit had to be filed within twelve months was not lawful).  Section 8.06 prescribes a time for giving notice of a claim, within one year after the closing date of the parties' Agreement.  Both sides agree that section 8.06 is a notice provision rather than a provision shortening the limitations period.  (Docket

8

Entry No. 13 at 5 (Chaparral's motion for partial summary judgment); Docket Entry No. 15

at 2 (Defendants' response and cross-motion for partial summary judgment)).

The first issue is whether such a notice provision is enforceable under Texas law.

Section 16.071 of the Texas Civil Practices and Remedies Code provides:

> A contract stipulation that requires a claimant to give notice of
> a claim for damages as a condition precedent to the right to sue
> on the contract is not valid unless the stipulation is reasonable.
> A stipulation that requires notification within less than 90 days
> is void.

TEX. CIV. PRAC. & REM. CODE § 16.071(a).  Section 8.06 of the parties' Agreement requires

Chaparral, the Buyer, to give the Seller notice of a claim that the Seller is liable "under this

Agreement" or "for any other reason" within one year after the closing date of the

Agreement, August 4, 2004.  Chaparral does not argue that the one-year period was

unreasonably short.  Nor does Chaparral argue that it did not discover or could not with

reasonable diligence have discovered the allegedly impermissible perforations in the Vastar

Fee # 2 well until after August 3, 2005.  Chaparral's April 26, 2006 letter to the Seller

defendants makes it clear that at a minimum, Chaparral knew about the perforation problem

long before sending the letter because by that time, Chaparral had already spent in excess of

$100,000 on the well problem.

Chaparral argues that even if section 8.06 requires notice of a claim within a year

from the closing date, the failure to give such notice is not a bar to holding the Seller liable

for that claim.  Chaparral argues that if the consequence of failure to give the Seller notice

within the one-year set in the Agreement is to bar the claim, the notice requirement operates

9

as a statute of limitations and is invalid under Texas law. This argument is inconsistent with the language of the parties' Agreement. Section 8.06 makes timely notice of a claim Buyer's claim against the Seller a condition for the Seller's liability for that claim. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). Section 8.06 states that the Buyer must provide the Seller with written notice of a claim within a year of the Agreement's closing date, in sufficient detail to allow the Seller to evaluate the asserted claim. Section 8.06 does not define a limitations period because it does not state that the Buyer must file a lawsuit within a particular period or the claim will be barred.

Chaparral argues the proper remedy for failure to give notice as required under section 8.06 is not to dismiss the claim but is to abate it. (Docket Entry No. 13 at ¶ 16). Chaparral argues that a "defendant waives his right to such pre-suit notice if abatement is not sought." (*Id.* at ¶¶ 16–17). Chaparral relies on *Hines v. Hash*, 843 S.W.2d 464 (Tex. 1992). In that case, a plaintiff sued under the Texas Deceptive Trade Practices Act (DTPA), complaining that the roof the defendant had installed on the plaintiff's home leaked. The DTPA requires a plaintiff to give at least 30 days notice of the claim before filing suit. TEXAS BUS. & COMM. CODE § 17.50A (1979). In *Hines*, the Texas Supreme Court recognized that the statute made such presuit notice mandatory, but the Court emphasized that the statute did not specify the consequences for failure to comply. The Court noted that many statutes require notice before actions or claims can be filed. *Hines*, 843 S.W.2d at 468, n.4. The Court held that when a statutory notice requirement does not specify the consequence of noncompliance,

10

a court must "look to its purpose for guidance."  *Id.* at 468.  The purpose of the DTPA's requirement of notice of a claim 30 days before filing suit was to encourage presuit negotiations and settlements.  *Id.* at 467–68.  Given this purpose, "[w]hen a plaintiff fails to comply with the requirement, abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal.  While the action is abated, the parties may discuss their positions as they would have done during the period for pre-suit notice."  *Id.* at 468–69.  Abatement was preferable to dismissal "while the purpose of notice—settlement and avoidance of litigation expense—remains viable."  *Id.* at 469.  Because the defendant in *Hines* failed to ask for abatement, he waived the notice requirement.  *Id.* at 469.

The notice requirement set out in section 8.06 of the Agreement is different from the notice requirement in the DTPA and other statutes in which abatement rather than dismissal is the appropriate consequence for failing to comply.  The notice provision in the DTPA cited in *Hines* requires a claimant to give notice of the claim a certain amount of time before filing suit in order to encourage settlement.  If notice is not given, the same purpose can be achieved by abating the suit for the same period.  By contrast, section 8.06 of the Agreement does not require the Buyer to give the Seller notice of a claim a certain period *before* filing suit on that claim.  To the contrary, section 8.06 requires the Buyer to give the Seller notice of a claim within a certain period *after* the Agreement's closing date, without regard to when suit might be filed.

Section 8.06 is more like provisions in insurance contracts that require notice of a

claim or loss within a certain period after it occurs.  *See Stonewall Ins. Co. v. Modern Exploration, Inc*., 757 S.W.2d 432, 435–36 (Tex. App.–Dallas 1988, no writ).  Section 8.06 is also similar to bank deposit agreements that require a customer to notify the bank within a certain period after a bank statement is mailed of any claims of errors or unauthorized payment in order to hold the bank liable for such errors or payments.  See TEX. BUS. & COM. CODE ANN. § 4.103(a).  Such notice requirements serve a different purpose than the DTPA presuit notice requirement.  A requirement that notice be given within a certain period *after* a defined event serves the purposes of enabling the notice recipient to conduct a prompt investigation "while the matter is fresh in the minds of the witnesses," to form an "intelligent estimate of its rights and liabilities," and to "adequately prepare to defend any claim that may arise."  *Stonewall Ins.*, 757 S.W.2d at 435–36.

While the Section 8.06 notice provision in the Agreement between the parties does not specify in the text the consequence of noncompliance, the provision does state that notice of a claim within one year from closing is mandatory ("any assertion by Buyer that Seller is liable under this Agreement  . . . must be made by Buyer in writing and must be given to Seller on or prior to the last business day preceding the first anniversary of the Closing Date.").  The provision requires the notice to provide "sufficient detail to allow Seller to evaluate the assertion of Buyer."  The language of section 8.06 makes it purpose  clear.  It is to give the Seller enough information about the Buyer's asserted claim, within a year after the closing date, to allow the Seller to investigate within a reasonable period after the Seller sold the assets under the Agreement, while information and evidence are readily available,

12

and to evaluate the claim.  Encouraging settlement is not the sole or primary purpose of this notice requirement.  Unlike the situation in *Hines*, abatement would not serve the same purpose as giving notice within the time specified.  Abating the suit would not allow the Seller to investigate the evidence and information relating to the Vastar Fee # 2 well within a year after the closing date and evaluate the claim on the basis.  By the time Chaparral gave Seller notice of the claim relating to the Vastar Fee # 2 well, its physical condition had significantly changed because Chaparral had worked on it extensively.

Moreover, the DTPA notice provision discussed in *Hines* did not specify the consequences of noncompliance.  The heading of section 8.06 is "Limitation on Seller Liability."  Section 10.07 of the Agreement states that "headings of the articles and sections of this agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any of the terms or provisions of this agreement."  Using the heading for guidance reinforces the conclusion that the consequence of the Buyer's failure to give the Seller timely and proper notice of a claim means that the Seller will not be liable for that claim.  This construction is consistent with the language of the Agreement and is permitted by Texas law, which allows contracting parties to stipulate that a claimant must give notice of a claim for damages as a condition precedent to the right to sue on the claim, if the stipulation is reasonable.  TEX. CIV. PRAC. & REM. CODE § 16.071(a).

Based on the undisputed facts in the record, the court concludes that, as a matter of law, the notice provision in the parties' Agreement required Chaparral to give Seller notice of the claim relating to the Vastar Fee # 2 well within a year of the Agreement's closing date

in order to hold the Seller liable for that claim. The record shows that Chaparral failed to give the Seller notice of claims related to the Vastar Fee # 2 well within a year after the Agreement's closing date. Nothing in the record raises a fact issue as to whether it was unreasonable for Chaparral to give notice of the claims relating to the well within that one-year period. Chaparral's motion for partial summary judgment dismissing the notice defense is denied. The defendants' cross-motion for partial summary judgment that the claims relating to the Vastar Fee # 2 well are precluded by Chaparral's failure to give notice under the Agreement is granted.

## IV.   Conclusion

Chaparral's motion for partial summary judgment is granted as to the limitations and environmental claims defenses and denied as to the notice affirmative defense. (Docket Entry No. 13). The defendants' motion for partial summary judgment as to the notice defense with respect to the claims involving the Vastar Fee # 2 well is granted. (Docket Entry No. 15).

SIGNED on August 24, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge