**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHAPARRAL TEXAS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2468 |
| | § | |
| W. DALE MORRIS, INC., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Chaparral Texas, L.P., has applied for attorneys' fees in the amount of

$116,989 and its costs of court, based on the judgment entered on August 28, 2008.  That judgment

awarded Chaparral $10,709.85 on one of two claims that it asserted in this case.  The other claim,

which sought $150,000 in damages, was dismissed on summary judgment.  The defendants, W. Dale

Morris, Inc. ("WDMI") and Paul R. Galloway, Jr., agree that Chaparral is entitled to a reasonable

fee award but assert that the amount sought is excessive.  WDMI and Galloway argue that the award

should be based on a lodestar amount of no more than $25,000 to $30,000 and reduced further based

on the limited degree of success.  WDMI and Galloway also argue that Chaparral should not be

awarded its court costs based on the limited success.

Based on a careful review of the record, the motion and response, the parties' submissions,

and the applicable law, this court finds that the hourly rates of the attorneys are reasonable; the

number of hours reasonably spent pursuing Chaparral's claims should be reduced from the 420.9

claimed by Chaparral to 273.5; and that no further reduction under the *Johnson* factors is

appropriate.  In addition, this court awards Chaparral its court costs of $1,967.26.

This opinion does not include the arithmetic necessary to calculate the precise amount of the fee. The final amount changes slightly depending on how the calculation takes into account the varying hourly rates of the lawyers who worked on the case. Chaparral is to perform the arithmetic needed to calculate the exact fee amount using the hourly rates and the number of hours this court has found reasonably spent on the litigation. In submitting the final amount, Chaparral must include a brief explanation of how it did the calculation, that is, whether it prorated the amount initially sought ($116,989 for 420.9 hours) by the number of hours found reasonable (273.5 hours), or whether it applied the different hourly rates of the lawyers to those hours. Chaparral is first to provide the results to WDMI and Galloway, and then, no later than **March 13, 2009**, to this court.

The reasons for these rulings are set out below.

## I.     Background

This case arose out of a contract to purchase oil and gas wells, leases, and properties located in Texas. Chaparral was the purchaser; WDMI and Galloway were the sellers.

Chaparral's complaint asserted two claims. The first was a breach of contract claim that a saltwater-disposal well included in the sale was completed in violation of a Texas Railroad Commission permit. Chaparral sought approximately $150,000 in damages for the alleged contract breach. WDMI and Galloway moved for partial summary judgment that the well's condition did not breach the contract. That motion was granted on August 24, 2007. (Docket Entry No. 25).

The second claim arose from a dispute over which party was responsible for postclosing adjustments to the purchase price. Chaparral alleged that it was entitled to recover approximately $12,000 in postclosing adjustments and that WDMI's and Galloway's refusal to pay breached the contract. WDMI and Galloway counterclaimed for reimbursement for amounts spent on preclosing

cleanup work on the property sold to Chaparral.  On October 26, 2007, the parties entered a stipulation as to the amount of  Chaparral's postclosing adjustment claim and WDMI and Galloway's counterclaim.  The stipulation meant that the net amount in controversy was at most $7,069.93.

On November 8 and 9, 2007, the parties cross-moved for summary judgment on the remaining claim and counterclaim.  (Docket Entry Nos. 32, 33).  Both parties filed responses, (Docket Entry Nos. 34, 35), and Chaparral filed a reply to WDMI's and Galloway's response, (Docket Entry No. 36).  Chaparral sought summary judgment that it was entitled to $10,709.85 in postclosing adjustments with no offsetting obligation to reimburse WDMI and Galloway for preclosing cleanup costs.  Chaparral also asserted that it was entitled to prejudgment interest on the amount due and to attorneys' fees incurred in suing for the postclosing adjustments.  WDMI and Galloway agreed that they owed Chaparral $10,709.85 in postclosing adjustments, but sought summary judgment that this obligation was offset by their claim for reimbursement for $16,710.96 in preclosing cleanup costs.  (Docket Entry No. 32 at 2, 4–5).  WDMI and Galloway also argued that even if Chaparral prevailed in its breach of contract claim for WDMI's and Galloway's failure to pay $10,709.85 in postclosing adjustments, Chaparral was not entitled to recover the attorneys' fees it had incurred pursuing that claim.

On August 28, 2008, this court denied WDMI's and Galloway's summary judgment motion and granted Chaparral's motion, finding that, as a matter of law, Chaparral was not liable to reimburse WDMI and Galloway for the preclosing cleanup costs as a postclosing adjustment and was entitled to recover the $10,709.85 that WDMI and Galloway owed.  (Docket Entry No. 50).  This court entered final judgment awarding Chaparral $10,709.85.  (Docket Entry No. 51).

Chaparral timely moved for fees and costs, (Docket Entry No. 52), WDMI and Galloway filed their response, (Docket Entry No. 56), and Chaparral filed a reply, (Docket Entry No. 61).

Chaparral prevailed on its claim that it was owed money by WDMI and Galloway under the postclosing adjustment provision but was unsuccessful on its damages claim relating to the saltwater-disposal well issue. Chaparral may only recover those fees attributable to the claim on which it prevailed. There are three issues that must be addressed to determine the fee award. First, as to the attorney time spent on both claims, what amount of time is properly allocated to the successful claim? Second, what amount of attorney time was reasonably spent on the successful claim? Third, should the lodestar amount be reduced further?

## II.    The Applicable Law

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005). Under Texas law, a plaintiff is entitled to recover reasonable attorneys' fees for a successful breach of contract claim. TEX. CIV. PRAC. & REM. CODE § 38.001(8).[1] A plaintiff seeking attorneys' fees under § 38.001 has the burden of demonstrating the reasonableness and necessity of the fees and to segregate recoverable fees from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–14 (Tex. 2006); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007); *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490 (5th Cir. 2004). A court may reduce the number of hours awarded if the fee documentation provided is vague or

---

[1] Section 38.001(8) provides: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."

4

incomplete.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Both the Fifth Circuit and the Texas courts use the lodestar method for calculating attorneys' fees.  *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 867 (5th Cir. 2004); *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003); *AMX Enters., L.L.P v. Mater Realty Corp.*, --- S.W.3d ---, 2009 WL 51036, at **9–11 (Tex. App.–Fort Worth 2009, no pet. h.)*; Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.–Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 528 (Tex. App.–Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard.  This standard is substantially similar under both federal law and state law.").  The first step of this analysis is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case.  The reasonable hourly rate is based on "the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The second step is to determine the number of hours "reasonably expended" by the attorneys.  *McClain*, 519 F.3d at 284.  The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure.  *Id.*  The burden of demonstrating the reasonableness of the number of hours expended and the hourly rates charged falls on the fee applicant.  *Id.*

When a plaintiff seeks to recover attorneys' fees in a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the plaintiff must offer evidence segregating the hours worked among the various claims.  *Chapa*, 212 S.W.3d at 310–14; *Navigant Consulting*, 508 F.3d at 298.  "An award of attorney fees based on unsegregated fees

requires a remand." *Lesikar v. Moon*, 237 S.W.3d 361, 378 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (citing *Chapa*, 212 S.W.3d at 314); *see also AMX Enters.,* 2009 WL 51036, at *13. There is an exception to the duty to segregate when discrete legal services advance both a recoverable and unrecoverable claim that are so intertwined that they cannot be segregated. *Chapa*, 212 S.W.3d at 313–14. The party seeking to invoke this exception has the burden of demonstrating that it should apply. *Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio,* 269 S.W.3d 628, 642 (Tex. App.–San Antonio 2008, pet. filed) (citing *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.–Houston [1st Dist.] 2007, no pet.)). When such legal services are at issue, the fee applicant should identify the percentage of the time spent that would have been necessary even without the unrecoverable claim. *Chapa*, 212 S.W.3d at 314.

One consideration in determining the hours reasonably expended is whether the party seeking attorneys' fees exercised billing judgment. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. Fee applicants bear the burden of establishing the appropriate hours and hourly rates and that they exercised billing judgment. *Id.* at 800. The fee applicant should make a showing to the court of the hours that have been written off. "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.* at 799; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Mullins v. TestAmerica*, No. 3:02-cv-0106, 2008 WL 4526182, at *10 (N.D. Tex. Oct. 8, 2008) (deducting 15% from the fee award because the fee applicant claimed to have exercised billing judgment but did not show how many hours had been written off from the time entries submitted, and because there were other errors and

inconsistencies in the time entries); *Heliflight, Inc. v. Bell/Agusta Aerospace Co.*, No. 4:06-cv-425, 2007 WL 4373259, at **4, 8 (N.D. Tex. Dec. 12, 2007) (reducing fee award by 20% for various reasons, including the plaintiff's failure to show the total amount of time that had been written off).

Another consideration is whether the hours claimed by the fee applicant yield a fee that is excessive compared to the amount at stake or owed.  *See Sibley v. RMA Partners, L.P.*, 138 S.W.3d 455, 459 (Tex. App.–Beaumont 2004, no pet.).  "Attorney's fees must bear some reasonable relationship to the amount in controversy."  *Cordova v. Southwestern Bell Yellow Pages*, 148 S.W.3d 441, 448 (Tex. App.–El Paso 2004, no pet.) (citing *Rep. Nat'l Life Ins. Co. v. Heyward*, 568 S.W.2d 879 (Tex. Civ. App. – Eastland 1978, writ ref'd n.r.e.); *see also Thomas v. Bobby D. Assocs.*, No. 12-08-00007, 2008 WL 3020339, at *4 (Tex. App.–Tyler Aug. 6, 2008, no pet.).  Texas law does not require precise proportionality between the fees awarded and the amount of recovery or the original amount in controversy.  *See, e.g., Bank of Texas v. VR Elec., Inc.*, --- S.W.3d ---, 2008 WL 5455692, at *12 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (affirming $52,000 in attorneys' fees on recovery for $8276 missing check); *USAA County Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102–03 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (affirming $52,310 in attorneys' fees for recovering on $2,000 insurance claim); *Cordova*, 148 S.W.3d at 448–49 (affirming $20,885 in attorneys' fees for recovering damages under a $7,092 contract); *Sibley*, 138 S.W.3d at 458–59 (affirming $82,748 in attorneys' fees for recovering on a note worth approximately $43,000).

Interpreting Texas law, federal courts have held that "disproportion alone does not render the award of attorneys' fees excessive."  *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 355 (5th Cir. 2001) (affirming $712,000 in attorneys' fees on recovery of $74,570 in actual damages on various state statutory and common law claims); *see also Quanta Serv's Inc. v.*

*Am. Admin. Group Inc.*, No. 08-20252, 2008 WL 5068804, at \*5 (5th Cir. Dec. 2, 2008) (unpublished) (affirming $116,767.68 in attorneys' fees for $100,000 damages award obtained in contract suit).

An application for a fee large in proportion to the amount at issue is more likely to be found excessive if the prevailing party's counsel "overprepared," expending more time and resources than warranted by the legal issues or the amount in controversy. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) ($529,209.88 in fees for one year of work by 11 attorneys and 6 paralegals was excessive "for what was – or at least should have been – simply a coverage dispute" about whether the insurer was obligated to indemnify and defend an additional insured against a $435,000 negligence claim); *Cordova*, 148 S.W.3d at 449 ("If the prevailing party has overprepared the case, then the party liable for attorney's fees should not be held responsible for time spent in overpreparation."); *Republic Nat'l Life*, 568 S.W.2d at 887 (attorneys who "worked between 750 and 1,000 hours on [a] $12,000 [contract] lawsuit . . . overproduced and defendant should not be held liable for such overproduction.").

Once the lodestar is determined, a court must determine whether to increase or decrease the amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh

similar factors set out in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op, Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.–Dallas 2007, no pet.).

### III.    Analysis

Chaparral has submitted an affidavit by one of its lawyers, Paul F. Simpson.  (Docket Entry No. 52, Ex. 1).  The affidavit sets out the hourly rates of the six lawyers and one paralegal who worked on this case.  These ranged from $100 for an associate with one year of experience to $405 for a partner with 21 years of experience and from $125 to $135 for the paralegal (who had 29 years of experience).  The affidavit also totals the hours and fees for each individual on both of the claims, and the hours and total fees that Chaparral asserts are attributable solely to the postclosing adjustment ("PCA") claim.  These rates, hours, and fees are set forth in Chart 1:

**Chart 1**

| Name | Initial Experience | Primary Area of Practice | Hourly Rate | Total Hours | Total Fees | Hours on PCA Claim | Fees for PCA Claim |
|---|---|---|---|---|---|---|---|
| Paul F. Simpson | 21 years | Commercial Litigation | $395-$405 | 216.3 | $87,088 | 138.9 | $55,731 |
| J. Derrick Price | 3 years | Commercial Litigation | $225-$255 | 238.3 | $56,108 | 221.9 | $52,418 |
| Somer George | 2 years | Commercial Litigation | $195-$210 | 76.2 | $15,672 | 15.1 | $3,061 |
| Sarah Langlois | 1 year | Commercial Litigation | $100 | 12.4 | $1,240 | 12.4 | $1,240 |
| Ellen Spalding | 6 years | Commercial Litigation | $285 | 1.6 | $456 | 1.6 | $456 |
| Mark Knisley | 33 years | Civil Appellate Law | $385 | 0.2 | $77 | 0.2 | $77 |

| Patricia Gunning | 29 years | Legal Assistant | $125-$135 | 41.8 | $5,447 | 30.8 | $4,007 |

(Docket Entry No. 52, Ex. 1 at 2, 5).

Chaparral also attaches to Simpson's affidavit a chart of redacted billing entries for both the saltwater-disposal well and postclosing adjustment claims. (*Id.*, Ex. 1-A). Simpson's affidavit states that he segregated the fees attributable to the claim on which Chaparral prevailed – the postclosing adjustment claim – from the claim on which it did not. The billing entries indicate that Chaparral's counsel spent 586.8 hours on this case and billed fees of $166,088. Chaparral requests fees for 420.8[2] hours of attorney time at a total amount of $116,989. According to Chaparral, this fee is based on the total number of hours devoted to the postclosing adjustment claim.

WDMI and Galloway do not challenge the reasonableness of Chaparral's attorneys' hourly rates. They do argue that the amount of time that Chaparral's attorneys devoted to the postclosing adjustment claim, and the resulting fee, are excessive. First, WDMI and Galloway challenge the allocation of time between the two claims before August 24, 2007, when this court issued its summary judgment opinion dismissing the $150,000 saltwater-disposal well claim. WDMI and Galloway argue that Chaparral allocated too much of the time spent advancing both claims to the postclosing adjustment claim. The chart of billing entries attached to Simpson's affidavit asserts that as of August 24, 2007, of 288 total hours billed to the case, Chaparral's lawyers had billed 122.1 hours and $34,142 in fees to the postclosing adjustment claim. (Docket Entry No. 52, Ex. 1-A at 1–14). Second, WDMI and Galloway argue that Chaparral "overstaffed" the case by using six

---

[2] It is a small point, but while Simpson's affidavit claims 420.8 hours, the hours appear to add up to 420.9 hours.

attorneys.  Finally, WDMI and Galloway argue that the hours Chaparral's lawyers spent on the postclosing adjustment claim after August 2007 were excessive, given that Chaparral knew "virtually from the inception of the case" that the claim "involved at most $16,000," (Docket Entry No. 54 ¶ 9),[3] and knew after October 26, 2007 that the claim involved no more than $7,069.93, (Docket Entry No. 30).

Based on these considerations, WDMI and Galloway argue that the lodestar should not exceed $30,000.  They ask that in calculating the lodestar, the number of hours reasonably spent on the postclosing adjustment claim be reduced to 105 (from 420.9).  WDMI and Galloway seek a further reduction based on the relatively small amount at stake after the August 24, 2007 summary judgment ruling that left the postclosing adjustment claim as the only claim in the case.  *See Johnson*, 488 F.2d at 718.

### A.    The Lodestar Calculation

As noted, there is no dispute as to the reasonableness of the hourly rates.  The issues are whether Chaparral has adequately segregated the hours spent on the postclosing adjustment claim from the hours spent on the saltwater-disposal well claim and whether the hours spent on the postclosing adjustment claim were reasonable and necessary.

### 1.    The Work Done Before August 24, 2007:  The Allocation Issues

Chaparral's attorneys had spent 288 hours working on this case when the August 24, 2007 summary judgment opinion dismissed the saltwater-disposal well claim.  Chaparral asserts that

---

[3] Chaparral knew roughly the value of its own claim from the beginning of the case – Chaparral's complaint filed on July 26, 2006 sought damages for the postclosing adjustment claim "in an amount exceeding $12,000."  (Docket Entry No. 1 ¶ 14).  It is not clear that Chaparral knew the value of WDMI and Galloway's counterclaim until the parties filed a stipulation as to damages on October 26, 2007.  (Docket Entry No. 30).

122.1 hours of this work were spent on the postclosing adjustment claim, yielding attorneys' fees of $34,142. WDMI and Galloway argue that Chaparral has allocated too many hours to the postclosing adjustment claim and is including hours that should be allocated to the failed saltwater-disposal well claim. WDMI and Galloway point out, for example, that Chaparral allocated 100% of the time spent on drafting the complaint and reviewing the purchase and sale agreement ("PSA") to the postclosing adjustment claim, although this work advanced both claims. Chaparral responds that because these legal services would have been necessary even in absence of the saltwater-disposal well claim, 100% of the fees for these services should be included in the lodestar.

*a.*      *The Legal Standard for Fee Segregation*

The Texas Supreme Court recently clarified the standard for segregating attorneys' fees when the legal services at issue advance both a recoverable and unrecoverable claim. In *Tony Gullo Motors I., L.P. v. Chapa*, 212 S.W.3d at 303, the plaintiff sued a car dealer for breach of contract, fraud, and violation of the Deceptive Trade Practices-Consumer Protection Act (DTPA). The plaintiff prevailed on all claims and the trial court entered a $20,000 fee award for hours expended on all of the claims. The Texas Supreme Court reversed the fee award and remanded for recalculation, concluding that fees were not recoverable on the fraud claim. The Court rejected the plaintiff's argument that time spent on legal motions that served to advance all the claims, such as drafting the complaint and filing discovery motions, should be 100% compensable because the work would have been necessary even in absence of the non-compensable claim. The Court recognized that if there is a substantial overlap in time spent on recoverable and unrecoverable claims, the attorneys' fees should be awarded for the part of that time spent advancing the recoverable claims:

> Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings,

12

> *voir dire* of the jury, and a host of other services may be necessary
> whether a claim is filed alone or with others.  To the extent such
> services would have been incurred on a recoverable claim alone, they
> are not disallowed simply because they do double service.

*Id.* at 313.  But the Court also determined that there was "no question" that the time the plaintiff's

attorneys spent "drafting her pleadings or the jury charge relating to fraud . . . w[as] not

recoverable."  *Id.*  The *Chapa* Court concluded that if the legal services advancing multiple claims

are substantially intertwined, the proper course for the party seeking fees is to estimate what

percentage of the legal services at issue would have been necessary in absence of the unrecoverable

claim:

> [The plaintiff's] attorneys did not have to keep separate time records
> when they drafted the fraud, contract, or DTPA paragraphs of her
> petition; an opinion would have sufficed stating that, for example, 95
> percent of their drafting time would have been necessary even if there
> had been no fraud claim.

*Id.* at 314.

Applying *Chapa*, a Texas appellate court affirmed the trial court's refusal to award the

plaintiff attorneys' fees under § 38.001.  *See Reinhardt v. Walker*, No. 14-07-00304, 2008 WL

2390482, at *6 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).  The plaintiff had not segregated

the fees for overlapping legal services, asserting that they were "inextricably intertwined."  *Id.*

Citing *Chapa*, the appellate court noted that "the mere fact that claims are based on common facts

or are 'intertwined' does not make all fees incurred recoverable":

> Here, while development of some of the facts may have been the
> same among the causes of action, it is evident that each claim
> required, at a minimum, drafting separate portions of the various
> pleadings.  Each claim also probably required separate legal research
> and possibly separate discovery requests and responses as well.

*Id.* at **6–7.  The appellate court affirmed the trial court's decision not to award fees because the plaintiff had not stated an opinion as to what percentage of total time would have been required absent the unrecoverable claim.  *Id.* at *7; *see also Allen v. Am. Gen. Fin., Inc.*, 251 S.W.3d 676, 692–93 (Tex. App.–San Antonio 2007, pet. filed) ("Clearly, there were discrete legal services performed by Allen's attorneys that related solely to claims other than the breach of contract and usury claims [on which he prevailed].  Accordingly, Allen was required to provide some evidence that would allow the trier of fact to award fees only for the breach of contract and usury claims.").

Federal courts applying *Chapa* have used a percentage formula to reduce fees when the prevailing party did not adequately segregate time spent on successful and unsuccessful claims.  In *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, No. 3:05-cv-2097, 2008 WL 1958998, at *4 (N.D. Tex. April 30, 2008), the plaintiff prevailed on a breach-of-contract claim but did not recover on several noncontract claims.  The plaintiff asserted that time entries for legal services that had advanced all the claims should be reduced by 10–15% for the unsuccessful claims.  The defendants argued that a 35–40% reduction for the unsuccessful claims was warranted.  *Id.*  The court noted that the descriptions of the purportedly intertwined tasks, such as "'[r]esearch legal issues for complaint; draft the same,'" were "so generic that it [wa]s virtually impossible to determine whether part or all of the time for any given entry was in support of Plaintiff's successful breach of contract claim or solely in support of one of its other non-contract claims."  *Id.* at *5.  To arrive at an appropriate percentage reduction, the court considered the nature of the claims involved and the complexities involved in pursuing each:

> First, there is no evidence that the relative percentage of time spent prosecuting non-contract claims was less than the relative percentage of time spent preparing for filing non-contract claims.  Plaintiff filed five non-contract claims and prosecuted all of them through

14

> discovery.  The court notes that the parties did not argue that the
> contract was ambiguous.  As is apparent from the parties' briefing on
> summary judgment, the contract claim was largely a legal issue, such
> that it is unlikely that substantial time was or should have been
> dedicated to it during discovery.  Thus, although some of the
> discovery pursued surely supported the contract claim as well as
> other claims, it is likely that a large percentage of the discovery
> pursued was used solely to discover and support non-contract claims.

*Id.* at *6.  The court concluded that the entries for legal services advancing all claims should be reduced by 30%. *Id.*

Similarly, in *Heliflight*, 2007 WL 4373259, at *6, the court concluded that a 35% percentage reduction was warranted for overlapping claims. The plaintiff succeeded on a breach of contract claim but was unsuccessful on claims for fraud, conversion, and DTPA violations.  The court noted that "[n]one of the proof" relevant to the unsuccessful claims "had relevance to breach of contract issues," making the plaintiff's assertion that 100% of the research devoted to all of the claims was properly allocated to the breach of contract claim less plausible.  *Id.*; s*ee also Mullins v. TestAmerica, Inc.*, 2008 WL 4526182, at *14 (applying 30% reduction to entries for services advancing all claims; the original complaint named thirteen defendants but only three remained for trial, only a handful of the plaintiff's claims remained at trial, and the plaintiff managed to prove only some of those claims).

>> b.    *Chaparral's Allocation of 100% of the Time Spent on Both Claims to the Postclosing Adjustment Claim*

There are numerous billing entries before August 2007 with time identified as spent working on both the saltwater-disposal well and the postclosing adjustment claims.  As to some of these entries, Chaparral included 50% of the total time in the fee application.  This allocation applies to

15

billing entries for such legal services as drafting initial disclosures, crafting a discovery plan, responding to written discovery, and preparing for and attending depositions.  WDMI and Galloway have not objected to this allocation.  But Chaparral has claimed 100% of the time billed for other entries that also appear to apply to both claims, such as reviewing the PSA, researching the arbitrability of the claims, drafting the complaint, drafting a case-management plan, and reviewing documents produced by the defendants.  WDMI and Galloway object that only a percentage of these entries should have been allocated to the postclosing adjustment claim.  These billing entries total 39.1 hours and account for $9,515 in claimed fees.  Chart 2, showing these entries, is set out below. Chart 2 does not include entries for procedural tasks that would not have been affected by this analysis, such as drafting a waiver of summons, drafting a certificate of interested parties, or traveling[4] to depositions of parties with knowledge of both claims.

**Chart 2**

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 5/3/06 | Simpson | 0.5 | Receive and review response from counsel for Dale Morris; review Purchase and Sale Agreement | 100% | 0.5 | $203 |
| 7/17/06 | Simpson | 1.4 | Research regarding arbitration statutes, enforcement, and venue; correspond with Mr. Tracy regarding same; begin work on drafting complaint | 100% | 1.4 | $567 |

---

[4] A court has discretion to reduce the fee award for nonworking travel time, particularly if there is evidence that it is not common practice in the relevant legal market to charge such fees.  *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 827–28 (5th Cir. 2008); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *Heliflight*, 2007 WL 4373259, at *8 (reducing travel time where it accounted for "thousands of dollars" on the billing statement, and much of that time did not appear to have been spent on work: "the court is not inclined to saddle defendants with billings for travel time at the attorneys' regular per-hour rates").  Because the relatively small amount of travel time in this case appears reasonable, and because WDMI and Galloway have not challenged the travel time claimed, this court does not reduce the hours claimed for travel.

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 7/25/06 | Gunning | 0.6 | Confer with Mr. Simpson regarding Complaint; attention to draft complaint; proof e-mail regarding attorney Southern District identification number | 100% | 0.6 | $75 |
| 7/26/06 | Gunning | 4.6 | Review e-mail; review draft; attention to filing; prepare exhibits to Complaint; attention to notice and waivers; various conferences with Mr. Simpson; to courthouse to file Complaint; confer with Mr. Simpson and Ms. Spalding; draft letter to Mr. Hamric; attention to mailings to defendants; calendar deadlines | 100% | 4.6 | $575 |
| 9/29/06 | Simpson | 0.6 | Review pleadings and arrange for legal research regarding arbitrability of claims and counterclaims, and authority (if any) of court to compel arbitration if parties waive arbitration provision | 100% | 0.6 | $243 |
| 9/29/06 | Langlois | 1.2 | Confer with Mr. Simpson regarding arbitration issues in Chaparral vs. Morris, Inc. and Galloway; receive and review plaintiff's Original Complaint and defendants' Original Answer and Conditional Counterclaim; legal research regarding arbitrability of claims | 100% | 1.2 | $120 |
| 10/2/06 | Langlois | 7.5 | Legal research regarding [arbitration issues]; draft memorandum regarding same | 100% | 7.5 | $750 |
| 10/3/06 | Langlois | 3.0 | Draft memorandum regarding [arbitration issues] | 100% | 3.0 | $300 |
| 10/4/06 | Langlois | 0.7 | Confer with Mr. Simpson regarding client's issues and memorandum addressing [arbitration issues] | 100% | 0.7 | $70 |
| 10/4/06 | Simpson | 1.3 | Review legal research memorandum and case law regarding arbitration issues; confer with Ms. Langlois regarding same | 100% | 1.3 | $527 |
| 10/5/06 | Simpson | 0.3 | Correspond with Mr. Tracy; attempt to contact and correspondence with counsel for defendants | 100% | 0.3 | $122 |

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 10/9/06 | Spalding | 0.8 | Communication with Mr. Simpson and Mr. Tracy regarding joint discovery, federal court; prepare joint discovery/case management plan | 100% | 0.8 | $228 |
| 10/12/06 | Spalding | 0.4 | Legal research regarding joint discovery/case management plan | 100% | 0.4 | $114 |
| 10/12/06 | Simpson | 0.8 | Prepare Joint Discovery and Case Management Plan; confer with Ms. Spalding regarding same | 100% | 0.8 | $324 |
| 10/16/06 | Simpson | 2.9 | Review pleadings and correspondence; draft Joint Case Management Plan; correspondence with counsel for Defendants regarding plan and regarding arbitration issues | 100% | 2.9 | $1,175 |
| 10/17/06 | Simpson | 2.7 | Receive and review revised draft of Joint Discovery/Case Management Plan; correspond with Mr. Tracy; confer and correspond with counsel for Morris; draft answer to counterclaims and transmit to Mr. Tracy | 100% | 2.7 | $1,094 |
| 12/19/06 | Simpson | 0.9 | Receive and review client's inquiry regarding claims, perform legal research, and send reply correspondence | 100% | 0.9 | $365 |
| 12/20/06 | Simpson | 1.4 | Receive and review correspondence from Mr. Tracy regarding claims; legal and factual research regarding same; reply correspondence to Mr. Tracy regarding results of research | 100% | 1.4 | $567 |
| 1/24/07 | Gunning | 0.5 | Review discovery responses; internet research regarding [potential witnesses]; forward information to Mr. Simpson | 100% | 0.5 | $65 |
| 2/15/07 | George | 0.7 | Confer with Mr. Paul Simpson regarding expert witnesses; Conduct internet research regarding expert witnesses; Review letter agreement received from Defense attorney; Review Federal Rules of Civil Procedure and Southern District local rules regarding agreement between parties | 100% | 0.7 | $147 |

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 3/27/07 | Simpson | 0.3 | Attention to reviewing data and planning and scheduling discovery | 100% | 0.3 | $122 |
| 3/27/07 | George | 0.2 | Confer with Mr. Paul Simpson regarding depositions and witnesses | 100% | 0.2 | $42 |
| 4/2/07 | Gunning | 0.3 | Review e-mail and draft memo; forward data to Ms. George; e-mails with court reporting firm | 100% | 0.3 | $39 |
| 4/3/07 | Gunning | 0.2 | Receive and organize production documents from Morris | 100% | 0.2 | $26 |
| 4/5/07 | Simpson | 0.2 | Review documents produced by defendants | 100% | 0.2 | $81 |
| 4/10/07 | Gunning | 0.3 | Confer with Mr. Simpson; obtain additional copy of production documents and organize by date; review e-mail to client | 100% | 0.3 | $39 |
| 4/10/07 | Simpson | 1.5 | Review and analyze documents produced by Morris; correspond with Mr. Tracy | 100% | 1.5 | $608 |
| 4/12/07 | Gunning | 0.1 | Review e-mail | 100% | 0.1 | $13 |
| 5/11/07 | Simpson | 0.9 | Confer with counsel for Defendants; complete and file Joint Mediation Status Report | 100% | 0.9 | $365 |
| 5/11/07 | George | 0.3 | Attention to mediation report; Attend to sending draft to defense attorney | 100% | 0.3 | $63 |
| 6/20/07 | George | 0.8 | Confer with client and Mr. Paul Simpson regarding deposition strategy and other issues | 100% | 0.8 | $168 |
| 6/21/07 | George | 0.3 | Draft letter to defense attorney and attend to sending | 100% | 0.3 | $63 |
| 7/17/07 | Gunning | 0.1 | Review correspondence; email Ms. George | 100% | 0.1 | $13 |
| 7/18/07 | Gunning | 0.1 | Review correspondence | 100% | 0.1 | $13 |
| 7/26/07 | Gunning | 0.2 | Review correspondence; update calendar | 100% | 0.2 | $26 |

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 8/21/07 | Simpson | 0.5 | Confer with Keith Tracy and with counsel for defendants regarding proposed motion for continuance, discovery, scheduling, and depositions of defendants | 100% | 0.5 | $203 |

(Docket Entry No. 52, Ex. A-1 at 1–14).

Although many of the legal services included on this chart would have been required even in the absence of the saltwater-disposal well claim, these services would not have required as much time. This was the situation the Texas Supreme Court addressed in *Chapa*. In that case, the Court did not require the prevailing party to have work records precisely allocating the time spent to one claim or to the other. The Court did, however, state that for time spent on legal services advancing a successful as well as an unsuccessful claim, the fee applicant must propose a percentage reduction for time spent on services for the unsuccessful claim. *See Chapa*, 212 S.W.3d at 314.

Chaparral has not explained why the time reflected in these billing entries on Chart 2 should not be reduced by a percentage reflecting an estimate of the time spent on the unsuccessful claim. Under *Chapa* and subsequent cases, such reduction is warranted. The saltwater-disposal well and the postclosing adjustment claims presented discrete issues with different pleadings and proof. Although both involved claims for breach of the PSA contract, the saltwater-disposal well claim involved technical and regulatory issues and evidence pertaining to those issues. The saltwater-disposal well claim ultimately was resolved against Chaparral on the basis of contract interpretation, but if the matter had proceeded on the merits, Chaparral would have had to present evidence on the actions taken to bring the saltwater-disposal well "into compliance with applicable rules and

20

regulations – in particular, the Texas Railroad Commission's permits and regulations," and would have had to demonstrate "the reasonableness and necessity of those actions." (Docket Entry No. 19). Chaparral conducted discovery into these areas before the saltwater-disposal well claim was dismissed. (*Id.*). The postclosing adjustment claim, which also turned on contract interpretation, involved much less discovery. The amount at stake in the saltwater-disposal well claim was also substantially more than in the postclosing adjustment claim, making it likely that Chaparral's attorneys would have spent more of their time advancing the larger claim when both were pending. In similar circumstances, Texas federal courts have applied a 30–35% reduction to the time advancing both successful and unsuccessful claims. *See Kimberly-Clark*, 2008 WL 1958998, at *6 (applying 30% reduction when the successful contract claim required less complex pleading and proof than the unsuccessful noncontract claims); *Heliflight*, 2007 WL 4373259, at *6 (applying 35% reduction where none of the proof relevant to unsuccessful claims had relevance to successful breach of contract issue).

A 30% reduction in the 39.1 hours claimed in the above chart is appropriate, reducing the total by 11.7 hours to 27.4 hours. The 122.1 hours Chaparral has claimed on the postclosing adjustment claim before the August 24, 2007 summary judgment opinion are accordingly reduced to 110.4 hours.

###### c.    *Time Spent on Legal Services Relating to Expert Witnesses*

Although WDMI and Galloway have not raised this issue, fees that Chaparral has claimed in connection with expert discovery also require reducing the number of hours "reasonably expended" for the purpose of calculating the lodestar. WDMI and Galloway did not designate

expert witnesses.  Chaparral's expert witness designation, filed March 23, 2007, listed four witnesses.  One witness, Pete Huddleston, an engineer, was "to testify about Chaparral's actions in bringing the Vastar Fee #2 Salt Water Disposal Well at issue in this case into compliance with applicable rules and regulations – in particular, the Texas Railroad Commission's permits and regulations – including the reasonableness and necessity of those actions."  (Docket Entry No. 19). Huddleston was "also expected to testify about Chaparral's damages in this case." (*Id.*).  Huddleston submitted a two-page report that addressed only the saltwater-disposal well claim.  (*Id.*, Ex. B). There is no evidence in the record that Huddleston performed any work on the postclosing adjustment claim.  The remaining three witnesses, Steven J. Watkins, Paul F. Simpson, and Somer R. George – all attorneys at the firm representing Chaparral – were to testify "on the subject of reasonable and necessary attorneys' fees."  (*Id.*).  Simpson submitted a three-page report that discussed the considerations applicable to attorneys' fee claims and listed the hourly rates of Chaparral's attorneys in connection with this case.  (*Id.*, Ex. C).

Chaparral's billing records attribute 5.3 hours of expert-related activity and $1,633 in fees to the postclosing adjustment claim.  The tasks included researching potential experts, designating experts, conferring with Huddleston, reviewing expert reports, and filing the designation of experts. Chart 3 shows these entries:

**Chart 3**

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|------|-----------|-------|-------------|-------|-----------|----------|
| 2/14/07 | Simpson | 0.2 | Attention to expert designation and report issues | 50% | 0.1 | $41 |
| 2/14/07 | George | 0.3 | Confer with Mr. Paul Simpson regarding expert witness deadline and potential expert witness; Review schedule order | 50% | 0.2 | $32 |

| Date | Timekeeper | Hours | Description | PCA % | PCA Hours | PCA Fees |
|---|---|---|---|---|---|---|
| 2/15/07 | George | 0.7 | Confer with Mr. Paul Simpson regarding expert witnesses; Conduct internet research regarding expert witnesses; Review letter agreement received from Defense attorney; Review Federal Rules of Civil Procedure and Southern District local rules regarding agreement between parties | 100% | 0.7 | $147 |
| 3/15/07 | George | 0.2 | Confer via e-mail with Mr. Paul Simpson regarding expert designation and report | 50% | 0.1 | $21 |
| 3/15/07 | Gunning | 0.1 | Review email; update calendar with new deadline for expert report | 100% | 0.1 | $13 |
| 3/16/07 | Simpson | 0.2 | Receive, review and file signed agreement extending expert deposition deadline | 100% | 0.2 | $81 |
| 3/19/07 | Simpson | 0.6 | Confer with consultant; review records and documents; attention to expert designation issues | 50% | 0.3 | $122 |
| 3/20/07 | George | 1.2 | Draft expert designation; confer with Mr. Paul Simpson regarding expert report; teleconference with Mr. Paul Simpson and Mr. Pete Huddleston regarding same | 25% | 0.3 | $63 |
| 3/22/07 | George | 1.8 | Confer with Mr. Paul Simpson and expert witness; review expert report; review and revise expert designation; draft attorneys' fees report; review and revise same; finalize filing; review local rules | 50% | 0.9 | $189 |
| 3/22/07 | Simpson | 4.1 | Meet and confer with consultant Pete Huddleston regarding issues and claims; correspond with Mr. Tracy work on expert designation and attorneys' fee report | 50% | 2.1 | $830 |
| 3/22/07 | Gunning | 0.1 | Confer regarding expert report | 100% | 0.1 | $13 |
| 3/23/07 | Simpson | 0.4 | Complete and file Designation of Experts | 50% | 0.2 | $81 |

(Docket Entry No. 52, Ex. A-1 at 7–9).

Although Chaparral has divided the time reflected in these billing entries between the two claims, most of the time is allocated to the postclosing adjustment claim.  Many of these entries are for work by the attorneys with Mr. Huddleston on his expert testimony on the saltwater-disposal well claim.  Several entries also refer to lawyers' conversations with "consultant" Huddleston about documents or his expert report.  The time reflected in these entries is attributable to the saltwater-disposal well claim.  Although experts on attorneys' fees are also identified, these experts all worked at the firm representing Chaparral, and two – Simpson and George – were the primary billers on the case when the expert designations were made.  (Docket Entry No. 52, Ex. 1-A at 1–13).  This work would reasonably take little research or time.

Some of the activities shown in the billing entries, such as drafting the attorneys' fee report,[5] seeking to extend the expert designation deadline, and filing the expert designation, are attributable to the postclosing adjustment claim and properly included in the fee calculation.  But many entries do not identify which expert "witness" or "report" is involved.  Other entries reflect work on both claims or on the attorneys' fee claim but do not provide enough information to tell whether the time allocation between the claims is appropriate.  The party seeking fees has the burden of proving reasonableness.  When the documentation provided is "vague, incomplete, or lacking sufficient information to determine the reasonableness and necessity of fees sought," a court may reduce or

---

[5] In general, a plaintiff is entitled to an award of reasonable attorneys' fees in connection with the time spent to prepare the fee application.  *See Riley v. Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *Prater v. Commerce Equities Mgt. Co.*, No. H-07-2349, 2008 WL 5140045, at *7 (S.D. Tex. Dec. 8, 2008).  WDMI and Galloway have not challenged an award of fees based on time Chaparral's attorneys incurred in preparing their fee application.

disallow the number of hours awarded.  *See Mullins*, 2008 WL 4526182, at *10 (citing *Pelt v. U.S.
Bank Trust Nat'l Assoc.*, 259 F. Supp. 2d 541, 542 (N.D. Tex. 2003)).

Because much of the expert-related work that Chaparral has allocated to the postclosing
adjustment claim related exclusively to the saltwater-disposal well claim, and because other entries
are vague or include references to both claims and do not contain enough detail to tell whether the
proposed allocation is appropriate, a reduction in the expert-related hours allocated to the
postclosing adjustment claim is appropriate.  The 5.3 hours claimed are reduced by 50%, to 2.7
hours.  Accordingly, Chaparral's total hours for the period before the August 24, 2007 summary
judgment ruling are further reduced to 107.8.

## 2.    Duplicative or Unnecessary Work

WDMI and Galloway object that there was "turnover amongst the professionals working on
the matter" for Chaparral, "resulting in some duplication of effort."  (Docket Entry No. 56 at 4).
Chaparral concedes that there was one incident of turnover, in which associate Derrick Price
replaced associate Somer George, who left the firm around July 2007.  Price spent 6.6 hours
familiarizing himself with the case, 3.5 hours and $788 in fees of which Chaparral has allocated to
the postclosing adjustment claim.  These 3.5 hours should not be included in the fee award.  *See
Diamond Shamrock Explor. Co. v. Hodel*, No. 86-537, 1991 WL 148745, at *1 (E.D. La. July 24,
1991) ("Although this may not be an unreasonable amount of time for review of a case by a new
attorney, it would be unreasonable to impose on the defendant the cost of plaintiff's counsel's
decision to assign a new attorney to the case.").  Accordingly, Chaparral's total hours claimed for
the period before the August 24, 2007 summary judgment ruling are further reduced to 104.3.

25

WDMI and Galloway's overstaffing objections are otherwise overruled.  Although six attorneys worked on the case, only three – partner Paul Simpson, associate Somer George, and George's replacement, associate Derrick Price – billed significant time.  The remaining three attorneys – partner Mark Knisley, associate Ellen Spalding, and associate Sarah Langlois, billed a combined 14.2 hours on the case (all of which Chaparral has allocated to the postclosing adjustment claim), for a combined $1,773 in fees.  Chaparral points out, and the billing records confirm, that these attorneys were asked to perform discrete tasks.  These tasks did not duplicate other work. Knisely billed 0.2 hours advising on the jury charge, Spalding billed 1.6 hours on such tasks as drafting the joint case management plan, and Langlois billed 12.4 hours researching arbitration issues.  (Docket Entry No. 61 at 9).  In addition, many of Spalding's and Langlois's billing entries have already been reduced by 30% based on allocating the time between the successful and the unsuccessful claim.  The work billed  by Knisley, Spalding, and Langlois is not a basis for further reduction of the number of hours used to calculate the lodestar.

### 3.    The Reasonableness and Necessity of the Hours Claimed

WDMI and Galloway's chief objection to Chaparral's fee application is that Chaparral's attorneys  "overproduced" on a claim that they knew "virtually from the inception of the case involved at most $16,000," (Docket Entry No. 54 ¶ 9), and knew after October 26, 2007 was worth at most a net $7,069.93, (Docket Entry No. 30).  Chaparral responds that the hours included in the fee application were reasonable and necessary because of the complexities of the issues and the amount of briefing required and because WDMI and Galloway refused at the outset of the case to arbitrate.

###### a.      The Legal Standard for Disproportionate Fee Awards

The fact that the hours spent and resulting fees are disproportionate to the amount in controversy or the amount recovered does not mean that the hours were unreasonable or the fees excessive.  But the cases show that when the fees sought are much larger than the amount at issue or recovered, a court must carefully scrutinize whether the hours and fees are excessive in light of the complexity of the legal and factual issues and the extent of litigation necessary to obtain a favorable result on those issues.  The court should also consider whether frivolous or burdensome claims or motions by the opposing party necessitated more work by the prevailing party.  The Fifth Circuit explained in *Mid-Continent Casualty*, 205 F.3d at 234, that in deciding whether fees sought are excessive, a court is "'entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and [the court's] common knowledge and experience as [a] lawyer[ ] and [a] judge[ ].'" (quoting *Giles v. Cardenas*, 697 S.W.2d 422, 429 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.).  "[T]he requested fees must bear a 'reasonable relationship to the amount in controversy or to the complexity' of the circumstances of the case."  *Id.* at 232 (quoting *Giles*, 697 S.W.2d at 429).[6]

---

[6] This court's analysis of disproportionality in fee awards is limited to contract and similar private dispute cases.  The courts have recognized that the analysis of disproportionality in civil rights and similar public-interest cases involves distinct policy and other considerations.  In *City of Riverside v. Rivera*, 477 U.S. 561 (1986), a § 1988 case, a four-Justice plurality of the Supreme Court refused to adopt a "rule of proportionality" for 42 U.S.C. § 1988 fees because such a rule "would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts" and would undermine "Congress' purpose in enacting § 1988." *Id.* at 578 (Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.).  Justice Powell cast the fifth vote to affirm the fee award of $245,456.25 for a case in which plaintiffs were awarded $33,350 in damages.  *Id.* at 581–86 (Powell, J., concurring in judgment).  Disproportionality is a consideration in civil rights and other public-interest cases. In the margin of his concurring opinion, Justice Powell stated, "[i]t probably will be the rare case in which an award of private damages can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* at 586 n. 3.  The courts have divided over the extent to which the public interest served by the underlying case should be considered before awarding disproportionate fees in civil rights cases.  *See, e.g., Moriarty v. Svec*, 233 F.3d 955, 967–68 (7th

*Mid-Continent* involved a suit between an insurer and an additional insured.  The additional

insured sued for $10 million, claiming that the insurer should be obligated to pay a $435,000 worker

injury verdict and indemnify the additional insured in appealing that verdict, and that the insurer's

refusal to do so violated Article 21.21 of the Texas Insurance Code, which prohibits unfair or

deceptive trade practices in the insurance business.  *Id.* at 225.  The trial court concluded that the

additional insured was entitled to coverage and the parties reached a settlement of the Texas

Insurance Code claim.  The fee issue was submitted to the trial court, which awarded the additional

insured $529,209.88 in attorneys' fees for its pursuit of both claims.  The Fifth Circuit reversed,

concluding that the sum was unreasonable and the award an abuse of discretion.  *Id.* at 234.  The

court cited excessive hours performing such tasks as reviewing transcripts.  The court also identified

"double charges" in which the same billing entry appeared twice in the same day or on consecutive

days.  The court rejected the insured's assertion that its fees and costs were necessitated by its

opponent's conduct – which included moving to disqualify the insured's counsel, seeking to limit

discovery, raising difficult but nonmeritorious factual challenges, and refusing to stipulate as to

attorneys' fees.  The court observed:

> Both parties have characterized themselves as victims of litigational
> warfare: [The insurer] accuses [the additional insured] of responding
> to its "simple request for declaratory relief as if nuclear war had been
> declared;" [the additional insured] counters that [the insurer] is
> responsible for the "blitzkrieg" of litigation which drove up [the

Cir. 2000) (relying on Justice Powell's concurrence to support the proposition that "proportionality concerns are a factor in determining what a reasonable fee is"); *Cunningham v. City of McKeesport*, 807 F.2d 49, 53–54 (3d Cir. 1986) (refusing to adopt a "rule of proportionality" or "consider the extent to which the public interest was vindicated by the award if the fee sought is disproportionate to the damages awarded"); *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 458 (3d Cir. 1989) (refusing to apply proportionality to fee award under RICO, 18 U.S.C. §§ 1961–68). But the analysis differs between cases seeking vindication of constitutional or federally protected rights and cases involving wholly private disputes.  As a result, the relevant cases for Chaparral's fee application are cases involving contract and similar disputes.

> additional insured's] fees and costs.  Needless to say, neither party is
> a novice to litigation. . . .  This fees dispute for this action does have
> some complexity, in part due to the multiple claims.  But, based on
> our review of the record, including the billing summaries submitted
> by [the additional insured], the award for this action . . . is excessive
> for what was – *or at least should have been* – simply a coverage
> dispute.

*Id.* at 233–34.  The appellate court reversed and remanded, admonishing the trial court to "'exclude

*all* time . . . that [w]as excessive, duplicative, or inadequately documented.'" *Id.* at 234 (quoting

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

By contrast, in *Northwinds Abatement, Inc. v. Employers Insurance of Wausau*, 258 F.3d

345, 354–55 (5th Cir. 2001), the Fifth Circuit concluded that $712,000 in attorneys' fees, which

were nine times the actual damages awarded in the case, were not excessive or unreasonable.  The

court noted that the prevailing party was "not very successful in [its] prosecution of this suit,"

recovering on "only two of its original laundry list of claims" and recovering only a "tiny fraction

of the multi-million dollar recovery it sought."  But the court concluded that the amount of time on

the case was reasonable because it "was a complex case to litigate, as it involved two appeals to this

court, the pursuit of administrative remedies, and full trial."  *Id.* at 355.

Texas appellate courts conduct a similar inquiry into the complexity of the legal issues and

the conduct of the opposing party when asked to approve a fee award high in relation to the damages

sought or awarded.  In *Thomas v. Bobby D. Associates*, 2008 WL 3020339, at *4, the court found

$49,000 in attorneys' fees excessive because the original amount in controversy was $87,140.46 and

the amount recovered was $7,030.00.  The court noted that "[t]he dispute was in litigation for seven

years, but the trial lasted little more than a day" and "there were periods when the case lay dormant

for years." *Id.*  The issues – whether a contract existed, and if so, whether waiver, laches, estoppel,

29

fraud, and fraudulent inducement prevented its enforcement – "were not complex." *Id.* at **1, 4. The record did not "show numerous trial settings, multiple depositions, or any indication of a treacherous procedural history." *Id.* The court concluded that the fees were excessive and reduced them by $24,000. *Id.* at *5.

Similarly, in *Musgrave v. Brookhaven Lake Property Owners Association*, 990 S.W.2d 386, 402 (Tex. App.–Texarkana 1999, pet. denied), the court concluded that $49,528.21 in attorneys' fees was excessive for a suit in which the plaintiffs succeeded in enforcing a restrictive covenant and recovered $49,420.97 in damages. The court acknowledged that over the course of three years, "the parties moved for summary judgment, participated in extensive discovery, participated in mediation, noticed and took depositions, and participated in a three-day trial to the bench." *Id.* The court nevertheless concluded that the fee award was excessive by $20,000 because the prevailing party's discovery efforts were excessive considering the value of the case: "[T]he Owners' attorneys overprepared for this case and Musgrave should not be held liable for the cost of overpreparing." *Id.* In *Giles v. Cardenas*, 697 S.W.2d at 430, the plaintiff prevailed in his suit to require the opposing party to remove a fence to comply with a restrictive covenant. The court found the $10,870.39 sought in fees excessive, concluding that the 92.7 hours spent by the plaintiff's attorneys "investigating the case, consulting with [the plaintiffs] and their witnesses, researching the law, and generally preparing the case for trial" was excessive given the "lack of complexities involved." The court reduced the fee award by $5,000. *Id.* Similarly, in *Republic National Life*, 568 S.W.2d at 887, the court concluded that a $65,000 fee award was excessive in a case involving a $12,000 insurance claim. "[I]f plaintiff's attorneys worked between 750 and 1,000 hours in this $12,000 lawsuit, then they overproduced and defendant should not be held liable for such overproduction."

*Id.* The court noted that the opponent had not "asserted numerous dubious or spurious defenses which prolonged payment of a claim which obviously should have been paid. . . . The defendant raised very legitimate defenses in view of the circumstances surrounding the death of its insured[, and] [t]he policy liability issue [wa]s close." *Id.* at 888.

The opposing party's conduct caused the court in *Cordova v. Southwestern Bell*, 148 S.W.3d at 448–49, to conclude that a $20,885 fee award in a case involving $7,092.18 was not excessive. "This was not a simple debt collection. By his counterclaim, [the debtor] requested damages for lost profits, attorney's fees, court costs, prejudgment interest, and exemplary damages." The debtor also chose not to convey that it had no evidence of actual damages until the day of the trial. *Id.* at 449. Similarly, in *USAA County Mutual Insurance Company v. Cook*, 241 S.W.3d 93, 102–03 (Tex. App.–Houston [1st Dist.] 2007, no pet.), the court affirmed a $53,310 fee award in a dispute over an insurance claim worth approximately $2,000 because most of the hours billed were spent responding to motions filed by the opposing party that ultimately were denied. The prevailing party's attorney had spent time "preparing and responding to requests for admissions and interrogatories, two depositions, [the opposing party's] motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and new trial." *Id.* at 103.

> b.      *Analysis: Hours Billed On the Postclosing Adjustment Claim*

Chaparral asserts that its counsel billed 122.1 hours and $34,142 in fees litigating the postclosing adjustment claim before August 24, 2007, when this court granted partial summary judgment dismissing the saltwater-disposal well claim. (With the adjustments discussed above, this figure is reduced to 104.3 hours.) After the summary judgment ruling issued on the saltwater-

disposal well claim, Chaparral's attorneys billed an additional 298.8 hours and $82,847 in fees advancing the postclosing adjustment claim.

On October 26, 2007, the parties entered a stipulation. Chaparral stipulated that it was claiming $11,778.67 in postclosing adjustment costs and cleanup costs. WDMI and Galloway stipulated that they owed Chaparral $10,709.85 and that their counterclaim was limited to $16,710.96 in preclosing environmental cleanup costs. These stipulations brought the total amount in controversy to $7,069.93. (Docket Entry No. 30). Between the entry of partial summary judgment on August 24, 2007 and the stipulation on October 26, 2007, Chaparral incurred an additional 98.5 hours and $25,424 in fees. The 98.5 hours included the following: 30.4 hours and $6,831 in fees for taking two depositions, including preparation, travel, and the depositions themselves; 11.9 hours and $3,039 in fees for additional written and document discovery and witness interviews; and 12.1 hours and $3,173 in fees drafting a joint pretrial order in anticipation of docket call. Most of the remaining 44.1 hours during this period were spent drafting Chaparral's motion for summary judgment on the postclosing adjustment claim; several additional hours were spent conferring with opposing counsel or performing administrative tasks. (Docket Entry No. 52, Ex. 1-A at 14–17).

After the stipulation, the remaining issue – whether WDMI and Galloway were entitled to payment for certain environmental cleanup expenses – was largely a matter of contract interpretation. WDMI and Galloway moved for summary judgment on November 8, 2007, arguing that under the PSA, Chaparral was responsible for the preclosing environmental cleanup expenses and the PSA did not bar recovery. They also argued that Chaparral did not give notice under the PSA necessary to require WDMI and Galloway to pay these expenses. Finally, WDMI and

Galloway argued that there was no enforceable oral agreement between the parties to have WDMI and Galloway pay the cleanup expenses. (Docket Entry No. 32).

Chaparral cross-moved for summary judgment on the postclosing adjustment issue on November 9, 2007, arguing that the terms of the PSA did not permit WDMI and Galloway to recover the preclosing environmental cleanup expenses. (Docket Entry No. 33). Chaparral also stated that it would only pursue the $10,709.85 that WDMI and Galloway conceded they owed, bringing the net amount in controversy to $6,001.11.

Chaparral filed its response to WDMI's and Galloway's summary judgment motion on November 28, 2007, reasserting that the PSA prohibited the recovery of the expenses that WDMI and Galloway sought and arguing that there was a genuine issue of material fact as to the existence and validity of an oral agreement to pay them. (Docket Entry No. 35). Chaparral did not address the individual components of the invoiced expenses. Instead, Chaparral argued in its reply, filed on December 13, 2007, that "[d]efendants' quibbling now after the twelfth hour about individual components of those costs does not raise a material fact issue on this point." (Docket Entry No. 36 at 6).

No brief in this round exceeded thirteen pages or attached more than seven exhibits. Chaparral's billing records claim 43.4 hours and $11,604 in fees for its summary judgment motion,[7] 26.7 hours and $6,469 in fees for its response to WDMI and Galloway's summary judgment motion, and 25.6 hours and $7,072 in fees for its reply in support of its motion for summary judgment.[8] In

---

[7] Most of the time spent on this motion – 35.7 hours – was before the stipulation.

[8] Chaparral asserts that its attorneys spent "at most" only 26.5 hours on the motion for summary judgment and reply, and an additional 26.5 hours responding to WDMI and Galloway's motion for summary judgment. (Docket Entry No. 61 at 6). From the billing records Chaparral has submitted, it appears that the 43.4 hours billed between October 20, 2007 and November 9, 2007 related to the summary judgment motion;

total, Chaparral's attorneys seek 95.7 hours and $25,145 in fees for this round of briefing.  The billing records reflect that most of these hours were billed by associate Derrick Price, who drafted the briefs.  Paul Simpson, a partner, spent some time editing and revising.  (Docket Entry No. 52, Ex. 1-A at 17–19).

After this round of briefing, between January 9 and January 22, 2008, Chaparral's attorneys worked on preparing a joint pretrial order in anticipation of a docket call scheduled for January 28, 2008.  Chaparral's attorneys billed 61.4 hours and $17,584.50 in fees on this work, which included drafting a memorandum of authorities, motions in limine, proposed voir dire, and jury charge, and assembling trial exhibits and witness lists.  The portions of the pretrial order prepared individually or jointly by Chaparral totaled 42 pages.  Associate Price did most of this work.  Partner Simpson edited, revised, and assisted with trial strategy.   Chaparral's attorneys spent an additional 13.3 hours[9] and $3,437 in fees preparing for and attending the docket call.  (Docket Entry No. 52, Ex. 1-A at 19–21).

On January 22, 2008, this court denied summary judgment to both parties and ordered supplemental briefing on the issue of whether one clause in the PSA that the parties had not addressed could be construed as permitting recovery of pre-closing environmental cleanup costs. Chaparral's ten-page supplemental motion, filed February 8, 2008, argued that the clause identified would irreconcilably conflict with another clause of the PSA that prohibited postclosing adjustments

---

the 26.7 hours billed between November 12, 2007 and November 28, 2007 related to the response; and the 25.6 hours billed between November 29, 2007 and December 13, 2007 related to the reply.  (Docket Entry No. 52, Ex. A-1 at 17–19).

[9]  This figure excludes 5.6 hours of entries billed to both the docket call and to the supplemental motion for summary judgment.  Because the record does not provide sufficient information to determine how much of this time should be allocated to the docket call and how much to the motion, all of these 5.6 hours are attributed to the supplemental motion for purposes of this opinion.

for environmental defects.  It attached one additional exhibit.  (Docket Entry No. 45).  WDMI and Galloway's six-page response argued that a conflict between the clauses at issue created an ambiguity that would require trial by jury.  (Docket Entry No. 48).  Chaparral's four-page reply argued that the PSA was not ambiguous.  (Docket Entry No. 49).  Chaparral's billing records reflect 39.9 hours and $13,198 in fees billed to the supplemental motion for summary judgment and 11.9 hours and $3,545 in fees billed to the reply, for a total of 51.8 hours and $16,743 in fees for this round of briefing.  Simpson did most of the work on the supplemental motion, including the legal research.  Price also did research, produced an initial draft, and did most of the work on the reply. (Docket Entry No. 52, Ex. 1-A at 22–23).

<em>c.      Whether the Hours Were Excessive</em>

The postclosing adjustment claim and the preclosing environmental cleanup counterclaim turned primarily on interpreting the PSA.  The contract construction issues were somewhat complex, even necessitating the submission of supplemental summary judgment motions by the parties.  But the parties' briefs were not long, did not involve numerous or complex exhibits, and did not require extensive case law research.  *See Mid-Continent*, 205 F.3d at 234 (despite that the action had "some complexity," "the award for this action . . . [wa]s excessive for what was – *or at least should have been* – simply a coverage dispute"); *Bobby D. Assocs.*, 2008 WL 3020339, at *4 (issues relating to contract formation and enforceability were not sufficiently complex to justify fee award almost seven times actual recovery).

The record does not show – and Chaparral has not argued – that WDMI and Galloway raised frivolous defenses or counterclaims, sought burdensome or unreasonable discovery, or filed baseless or vexatious motions.  *Cf. Cordova*, 148 S.W.3d at 448–49 (most of the hours incurred were spent

35

responding to frivolous counterclaim); *USAA*, 241 S.W.3d at 103 (most of the hours incurred were spent responding to burdensome motions and discovery requests). Chaparral argues that WDMI and Galloway are responsible for all of the fees spent in litigating this case because they refused at the outset to arbitrate as Chaparral claims the PSA required. The PSA called for binding arbitration of "[a]ny dispute arising out of or relating to this Agreement or the breach, termination, or validity thereof." (Docket Entry No. 33, Ex. A ¶ 10.11). Chaparral, however, did not raise the issue of arbitration before this court other than by stating in its complaint that it had sought arbitration. (Docket Entry No. 1 ¶ 1). Chaparral did not seek to dismiss this litigation in favor of arbitration. WDMI and Galloway's failure to pursue arbitration does not mean that Chaparral is entitled to recover all of its fees in litigation without regard to the lodestar analysis.

It does not appear that Chaparral's attorneys limited the time spent on the postclosing adjustment claim in light of the relatively small amount at stake. If anything, Chaparral seems to have increased its work after the amount at stake was reduced in August 2007. Chaparral billed more hours to the postclosing adjustment claim after the saltwater disposal claim was dismissed (298.8) than it billed for *both* claims before this court granted summary judgment on August 24, 2007 (288). Of the 298.8 hours worked and $82,847 billed after the summary judgment opinion issued, 200.3 hours and $57,423 were spent after Chaparral was aware that the amount in controversy was, at most, $7,069.93. Chaparral's attorneys billed 95.7 hours and $25,144.50 in fees on the first round of summary judgment briefing on the postclosing adjustment claim. Chaparral's attorneys then billed 74.7 hours and $20,535 in fees preparing for the January 28, 2008 docket call. On the second round of summary judgment briefing on the postclosing adjustment claim, Chaparral's attorneys billed 51.8 hours and $16,743 in fees.

Chaparral did have to prepare for docket call and, at this court's request, had to file a supplemental motion for summary judgment and reply on the postclosing adjustment claim. The issues were not straightforward or simple. But the total hours billed after August 2007, particularly after the October 2007 stipulations set the amount in controversy as no more than $7,069.93, were unreasonable in relation to the amount at stake and the nature and complexity of the issues.

> *d.     Reductions for Excessive Billing*

•      Postclosing adjustment claim hours before August 24, 2007:

Much of the time spent during this period advanced both claims. This court has already reduced the reasonable number of hours claimed from 122.1 to 104.3 to account for improper fee segregation and duplicative work, resulting in 104.3 reasonable hours for this phase. There is no need for further reduction.

•      Postclosing adjustment claim hours between August 24 and October 26, 2007:

Chaparral's attorneys billed 98.5 hours and $25,424 in fees during this period. Chaparral knew roughly the value of its own postclosing adjustment claim, which it stated in its complaint was around $12,000, (Docket Entry No. 1 ¶ 10), but it is not clear that it knew the value of WDMI and Galloway's preclosing environmental cleanup counterclaim. Much of the time during this period was spent on depositions and additional written discovery, some of which may have been necessary to assist Chaparral in assessing its potential exposure on the counterclaim. At the same time, however, Chaparral knew that there was substantially less at stake than before the saltwater-disposal well claim was dismissed, but does not appear to have modified its pace of billing accordingly. A 30% reduction to the total hours billed during this period is appropriate to adjust for the failure to

limit the amount of time spent in light of the small amount at issue, resulting in a total of 69 reasonable hours for this phase.

• Postclosing adjustment claim hours incurred after October 26, 2007:

After the parties' stipulations, Chaparral was aware that the claims at issue were worth no more than a net $7,069.93. Chaparral billed another 200.3 hours and $57,423 in fees during this time. Some of this billing was required by the exigencies of the case, which included two rounds of summary judgment briefing and one docket call, and by the nature of the issues raised. But these hours were excessive in light of the amount in controversy. A 50% reduction to the total hours billed during this period is appropriate, resulting in a total of 100.2 reasonable hours for this phase.

The number of hours reasonably expended for purposes of the lodestar calculation is 273.5.

**B.      Whether Adjustments to the Lodestar Are Appropriate**

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Saizan*, 448 F.3d at 800. A district court may decrease or enhance the lodestar based on factors first set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19. Some of these figures are subsumed in the initial lodestar calculation and should not be double counted. *Saizan*, 448 F.3d at 800. WDMI and Galloway urge that this court should apply the eighth *Johnson* factor to reduce the lodestar based on the amount in controversy and the results obtained. WDMI and Galloway argue that Chaparral did not prevail on the larger, $150,000 saltwater-disposal well claim, and that its expenditures on the postclosing adjustment claim after August 24, 2007 were unreasonable.

The lodestar reduction that WDMI and Galloway propose is unwarranted. This court has already segregated the fees applicable to the saltwater-disposal well claim and made substantial

38

percentage reductions to Chaparral's fee award based on the number of hours expended in relation to the amount in controversy.  This court has already considered the time and labor involved, the novelty and difficulty of the questions, the skill requisite to perform the legal services properly, and awards in similar cases.  The *Johnson* factors do not warrant further adjustment.

## IV.    Costs of Court

Chaparral also seeks $1,967.26 in court costs under Federal Rule of Civil Procedure 54(d). Rule 54(d)(1) provides, in relevant part, that "[u]nless a federal statute, these rules or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).[10]

Chaparral has submitted a bill of costs in the amount of $1,967.26.  These costs include $350 in Court Clerk fees, $1,233.01 in court reporter fees for the deposition transcripts of five deponents, and $384.25 for copying.  (Docket Entry No. 52, Ex. 2).  Chaparral asserts – and WDMI and

---

[10]  Title 28 U.S.C. § 1920 allows the following categories of costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920

Galloway do not dispute – that Chaparral seeks reimbursement only for the costs associated with the claim upon which it prevailed.  WDMI and Galloway do not assert that the costs sought are excessive or fall outside the appropriate statutory categories.  Instead, they urge this court to exercise its discretion to deny Chaparral's request for costs because Chaparral did not prevail upon "the most significant issue in this case."  (Docket No. 56 at 7–8).

Chaparral has sought costs only for the claim upon which it prevailed.  WDMI and Galloway's objection is overruled.  WDMI and Galloway are ordered to pay $1,967.26 in costs to Chaparral.

## V.    Conclusion

The number of hours reasonably expended for purposes of the lodestar calculation were 273.5.  The reasonableness of the lawyers' hourly rates is not challenged.  No further reductions to the lodestar are warranted.

No later than **March 13, 2009**, Chaparral must inform this court of the precise lodestar amount and how it was calculated.

Court costs of $1,967.26 are awarded.

SIGNED on February 23, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

40